## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| MICHAEL LAMENSDORF and KATHY LAMENSDORF, Individually As Parents Of JOHN HUNT LAMENSDORF, Deceased, and MICHAEL LAMENSDORF, As Personal Representative of the Estate of JOHN HUNT LAMENSDORF, Deceased, | **JURY TRIAL DEMANDED** |
| Plaintiffs, | **CIVIL ACTION FILE NO. 5:09-CV-424-HL** |
| v. | |
| NEW YORK UNIVERSITY, EZRA M. SACKS, STEPHEN MICHAEL SIMON, ANDREW WHITE, ANDRES CARDONA, RACHAEL FUNG, JASON WELIN, PEN PALS PRODUCTIONS, LLC, STEPHEN ROBERT SIMON, and NES RENTALS HOLDINGS, INC., | |
| Defendants. | |

### PLAINTIFFS' AMENDED COMPLAINT FOR DAMAGES

COMES NOW Michael Lamensdorf and Kathy Lamensdorf, individually as parents of their son, John Hunt Lamensdorf, Deceased, and Michael Lamensdorf, as Personal Representative of the Estate of John Hunt Lamensdorf, Deceased, Plaintiffs in this action, and file this Amended Complaint for Damages against Defendants as follows:

### PARTIES AND JURISDICTION

1.

Plaintiffs Michael Lamensdorf and Kathy Lamensdorf are the natural parents of their son, John Hunt Lamensdorf, Deceased, and Michael Lamensdorf is the Personal Representative of the

Estate of John Hunt Lamensdorf, Deceased.  Plaintiffs are citizens and residents of the state of Florida and voluntarily submit themselves to the jurisdiction of this Court.

2.

Defendant New York University (hereinafter "NYU") is a non-profit entity organized and/or incorporated under the laws of the State of New York with its principal place of business in New York City, New York.  Defendant NYU is subject to the jurisdiction of this Court because NYU and its students committed a tortious act or omission within the state of Georgia. Defendant NYU encourages its undergraduate film students to volunteer to serve as crew members on each other's student films.  With respect to the present case, Defendant NYU and its faculty approved student Stephen Simon's NYU course-related film, provided Simon an allotment of NYU money, use of NYU film equipment, access to NYU facilities, and coverage under NYU-provided insurance for his film project.  Defendant NYU, through its employee Defendant Sacks, knew that the budget for Simon's NYU film project was in excess of $20,000. Defendant NYU, through its employee Defendant Sacks, knew that Simon's NYU film project involved using multiple pieces of large, complex, and dangerous equipment.  Defendant NYU, through its employee Defendant Sacks, knew that Simon's NYU film project included a large film crew of many NYU undergraduate students who would travel from the state of New York to the state of Georgia to shoot the film.  These NYU students were employees and/or agents of Defendant NYU with respect to the incident-in-suit, and these individuals committed negligent acts and omissions within Georgia within the course and scope of their employment and/or agency with Defendant NYU.  Defendant NYU is vicariously liable for the negligence of multiple defendants in this case.  Defendant NYU also is independently liable for its own negligence in this case.  Thus, this Court has personal jurisdiction over Defendant NYU. Defendant NYU may be served with Summons and a copy of this Complaint as allowed by law.

3.

Defendant Ezra M. Sacks is a citizen and resident of the state of New York, and resides at 100 Bleecker Street, Apartment 11C, New York, New York 10012. Defendant Sacks is a Professor in the NYU undergraduate film and television program. Defendant Sacks is subject to the jurisdiction of this Court because he knew that student Stephen Simon's NYU film project for Defendant Sacks' course included traveling to the state of Georgia to shoot the film. Defendant Sacks knew that the budget for Simon's NYU film project was in excess of $20,000. Defendant Sacks knew that Simon's NYU film project included using multiple pieces of large, complex, and dangerous equipment. And, Defendant Sacks knew that Simon's NYU film project included a large film crew of many NYU undergraduate students who would travel to the state of Georgia to shoot the film. Defendant Sacks approved Simon's Senior Thesis film project, which allowed Simon to obtain an allotment of money from NYU, use of NYU film equipment, access to NYU facilities, and coverage under NYU-provided insurance for his film project. After John Lamensdorf's death, Defendant Sacks finally traveled to the film site in Georgia to meet with his NYU students and gather NYU film equipment for return to NYU. Defendant Sacks may be served with Summons and a copy of this Complaint as allowed by law.

4.

Defendant Stephen Michael Simon is a citizen and resident of the state of Georgia, and resides at 9100 Four Mile Road, Gainesville, Georgia 30506. Defendant Stephen Michael Simon is subject to the jurisdiction of this Court because he is a resident of Georgia, and he committed a tortious act or omission within the state of Georgia. Defendant Stephen Michael Simon may be served with Summons and a copy of this Complaint as allowed by law.

5.

Defendant Andrew White is a citizen and resident of the state of Massachusetts, and resides at 4 Grove Street, Byfield, Massachusetts 01922.  Defendant White is subject to the jurisdiction of this Court because Defendant White committed a tortious act or omission within the state of Georgia.  Defendant White may be served with Summons and a copy of this Complaint as allowed by law.

6.

Defendant Andres Cardona is a citizen and resident of the state of Texas.  Defendant Cardona is subject to the jurisdiction of this Court because Defendant Cardona committed a tortious act or omission within the state of Georgia.  Defendant Cardona may be served with Summons and a copy of this Complaint as allowed by law.

7.

Defendant Rachael Fung is a citizen and resident of the state of New York.  Defendant Fung is subject to the jurisdiction of this Court because Defendant Fung committed a tortious act or omission within the state of Georgia.  Defendant Fung may be served with Summons and a copy of this Complaint as allowed by law.

8.

Defendant Jason Welin is a citizen and resident of the state of Georgia, and resides at 512 Concepts 21 Drive, Norcross, Georgia 30092.  Defendant Welin is subject to the jurisdiction of this Court because he is a resident of Georgia, and he committed a tortious act or omission within the state of Georgia.  Defendant Welin may be served with Summons and a copy of this Complaint as allowed by law.

9.

Defendant Pen Pals Productions, LLC is a limited liability company organized and existing under the laws of the state of Georgia.  All of the members of Defendant Pen Pals Productions, LLC are citizens of the state of Georgia.  Defendant Pen Pals is subject to the jurisdiction of this Court because it is a Georgia limited liability company, and it committed a tortious act or omission within the state of Georgia.  Defendant Pen Pals may be served by delivering Summons and a copy of this Complaint to its registered agent for service of process, Stephen Robert Simon, located at 9100 Four Mile Road, Gainesville, Georgia 30506.

10.

Defendant Stephen Robert Simon is a citizen and resident of the state of Georgia, and resides at 9100 Four Mile Road, Gainesville, Georgia 30506.  At all relevant times, Defendant Stephen Robert Simon was an officer, director, and principal for Defendant Pen Pals Productions.  Defendant Stephen Robert Simon is subject to the jurisdiction of this Court because he is a resident of Georgia, and he committed a tortious act or omission within the state of Georgia.  Defendant Stephen Robert Simon may be served with Summons and a copy of this Complaint as allowed by law.

11.

Defendant NES Rentals Holdings, Inc. is a corporation incorporated under the laws of the state of Delaware.  Defendant NES Rentals Holdings, Inc.'s principal place of business is in the state of Illinois.  Defendant NES Rentals is subject to the jurisdiction of this Court because Defendant NES Rentals transacts business within the state of Georgia, and Defendant NES Rentals committed a tortious act or omission within the state of Georgia.  Defendant NES Rentals may be served with Summons and a copy of this Complaint as allowed by law.

12.

Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because there is diversity of citizenship of the parties and the amount in controversy is greater than $75,000.00.  Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district and in this division of this district.

**FACTUAL BACKGROUND**

13.

Defendant New York University's Tisch School of the Arts is a prestigious undergraduate film school.  Tisch School of the Arts (hereinafter "Tisch") is consistently ranked as the #1 film school in the United States by U.S. News & World Report and other school ranking services.

14.

Tisch film school offers its students a wide selection of the most technologically advanced facilities and resources available, including a Film Library, Animation Area, Teaching Soundstage, Television Soundstage, Live Television Studios, Production Center, and Post-Production Center.

15.

Defendant NYU describes the Tisch Production Center as "one of the largest filmmaking facilities on the Eastern Seaboard."  The Production Center is run by 11 full-time employees and over 50 professionally trained technical assistants, and provides Tisch film students with much of the equipment needed to make a film.

16.

Defendant NYU encourages Tisch undergraduate film students to familiarize themselves with film production by volunteering to serve as crew members on each other's student films.

17.

Defendant Ezra M. Sacks is a NYU Professor who teaches courses for undergraduate film students at Tisch.  One of courses taught by Defendant Sacks is Advanced Production Workshop II.

18.

Only Tisch film students meeting certain requirements and selected by Defendant Sacks can enroll in Advanced Production Workshop II.  During this course, each student works on his Senior Thesis film project the entire semester, preparing a budget, getting the film crew together, and planning the film shoot.  Defendant Sacks supervises, consults with, and guides the students through this process.

19.

Students in Advanced Production Workshop II submit their film projects to Defendant Sacks for approval.  Once Defendant Sacks approves a student's film project, NYU provides that student with an allotment of money, use of NYU equipment, access to NYU facilities, and coverage under NYU-provided insurance for his Senior Thesis film project.

20.

For the Spring 2009 semester, NYU Tisch student Stephen Simon was admitted to Defendant Sacks' Advanced Production Workshop II course.

21.

Throughout the Spring 2009 semester, Stephen Simon, under the supervision and guidance of NYU through Defendant Sacks, revised and finalized the production plan for his Senior Thesis film project, assembled a film crew of NYU undergraduate students, and obtained Defendant Sacks' and Defendant NYU's approval to make his Senior Thesis film.  The budget for Stephen Simon's film, titled "Lovely Lying Lips," was in excess of $20,000.

7

22.

Simon's NYU film crew consisted of, in part, Defendant Andrew White, who held the position of Director of Lighting and Photography; Defendant Andres Cardona who held the position of Best Boy Electric; and Defendant Rachael Fung, who held the position of Producer.

23.

Plaintiffs' decedent John Lamensdorf, who also was a student in Defendant Sacks' Advanced Production Workshop II course, volunteered along with other NYU students to help his NYU classmate Stephen Simon with his NYU film project. John Lamensdorf held the position of Grip.

24.

In approximately mid- to late-May 2009, Simon took his allotment of money from NYU, was provided with various pieces of film equipment from NYU's productions facilities, rented more film equipment from Hand Held Productions in New York City, rented a van, and set out with approximately 20 NYU students to travel with him to the state of Georgia to make his NYU Senior Thesis film.

25.

Defendant Sacks knew that Stephen Simon's NYU film project included traveling to the state of Georgia to shoot the film. Defendant Sacks knew that the budget for Simon's NYU film project was in excess of $20,000. Defendant Sacks knew that Simon's NYU film project involved using multiple pieces of large, complex, and dangerous equipment. And, consistent with NYU's policy of encouraging Tisch undergraduate film students to volunteer to serve as crew members on each other's student films, Defendant Sacks knew that Simon's NYU film project included a large film crew of many NYU undergraduate students who would travel to the state of Georgia to shoot the film.

26.

No teaching or staff member of Defendant NYU Tisch School of the Arts accompanied Stephen Simon and the many other NYU undergraduate students on the film project trip to Georgia to provide supervision, expertise, management, or guidance.

27.

Pen Pals Productions is a company affiliated with Stephen Simon to produce Simon's NYU film. Among other activities and responsibilities, Pen Pals Productions hired a gaffer to serve as the film crew's electrician and was obligated for payment of rental fees for various pieces of equipment rented for the film.

28.

Plaintiffs' decedent John Lamensdorf volunteered as an NYU student to help his NYU classmate Stephen Simon with his NYU film project. John Lamensdorf did not volunteer his efforts on behalf of Pen Pals Productions.

29.

Once in Georgia, film crew member Nicki Bertsch called Defendant NES Rentals in Stone Mountain, Georgia. Defendant NES Rentals advertises that it "is a leader in the $25 billion equipment and rental industry, and is #1 in rentals of aerial lifts." Defendant NES Rentals rents aerial lifts to those in the construction industry, HVAC, roofing, maintenance and repair overhaul, and facilities management. There is no indication in Defendant NES Rentals' corporate literature or marketing materials that it rents aerial lifts to college students or other untrained persons.

30.

NYU film crew member Nicki Bertsch ordered via telephone from Defendant NES Rentals a Genie Z45/25RT aerial boom lift for rental. The Genie Z45/25RT is a large, complex,

and dangerous self-propelled articulating boom weighing over 13,000 lbs. with a working height of approximately 45 feet and a two-man working platform.

31.

On or about May 27, 2009, another NYU student, Raquel Cedar, arrived and rented the aerial lift from Defendant NES Rentals.  Defendant NES Rentals did not provide Ms. Cedar with any Operator responsibilities documentation before renting the lift to her, nor did Defendant NES Rentals offer Ms. Cedar any training on the large piece of equipment.  Without training the customer or ensuring that the customer understood how to safely operate the aerial lift, Defendant NES Rentals delivered the Genie Z45/25RT aerial lift to the film site in Monticello, Georgia.

32.

Before reaching the film site, Defendant Pen Pals Productions rented from Production Consultants & Equipment in Atlanta a MQ Power 45KVA generator, a pick-up truck to tow the generator, an electrical distribution box, and various electrical cables.

33.

On behalf of both Defendant NYU and Defendant Pen Pals, Stephen Simon, Stephen Robert Simon, and Rachael Fung secured the services of Defendant Jason Welin, a resident of Norcross, Georgia, to operate the aerial lift and help set up the film site with wires and cables for electrical equipment and lighting purposes.  Defendant Welin had no formal training to operate the aerial lift, nor did he have any formal electrical license, training, background, or experience.

34.

The NYU film crew then departed the Atlanta area with a van full of film equipment and a large generator and pick-up truck, and traveled to Monticello, Georgia, a small town of approximately 2,500 residents located in Jasper County in central Georgia.

35.

Neither Defendant NYU, Defendant Sacks, Defendant Pen Pals, Defendant Stephen Robert Simon, or the various Defendant NYU students notified anyone in Monticello that the NYU film crew would be arriving in Monticello in late May, 2009 to make a NYU student film. Specifically, Defendants NYU, Sacks, Pen Pals, Simon, nor NYU students notified the Chamber of Commerce that its students were coming; they did not notify the Jasper County Sheriff's Department that they were coming; they did not notify the Jasper County Fire Department; they did not notify the Central Georgia EMC power company; and they did not notify any town official or newsperson that they were coming to Monticello to make a student film.

36.

Defendants Pen Pals and Stephen Robert Simon selected an abandoned house approximately five miles outside of Monticello in a rural area as the site for his NYU film project, "Lovely Lying Lips."  The area near the abandoned house is deserted: there are no residences or businesses located anywhere nearby.  Streetlights are non-existent, leaving the rural area in total darkness after sundown.  The house Pen Pals selected for the NYU film had been vacant for many years, and was in complete disrepair to the point of being hazardous in many respects.

37.

Most importantly, there were highly energized power lines stretching across the road directly in front of the abandoned house chosen as the NYU film site.  Consistent with failing to alert anyone of their arrival to the area, Defendants NYU, Sacks, Pen Pals, Simon, and the NYU students also neglected to notify the local power company that they would be filming in the area and using a 45-foot aerial lift within close proximity of overhead power lines.

38.

The NYU crew set up the site and filmed at the abandoned house outside of Monticello for the first day on Wednesday, May 27, 2009, and completed its activities several hours after midnight on May 28, 2009.

39.

On Thursday, May 28, 2009, the NYU film crew returned to the film site around 4:00 p.m. to set up for filming scenes at night. NYU student Andrew White told Jason Welin to position the aerial lift across the street under the overhead power lines in front of the house for use later that evening. Attached to the metal rail of the lift platform with a vice grip and metal chains, was a metal stand holding two large items: (1) a 12,000 watt spotlight to illuminate the front area of the house; and (2) a diffuser frame, which is a 4' x 6' metal frame with a piece of silk stretched side to side, to diffuse the intense light from the 12K spotlight. The spotlight and diffuser frame were approximately 4 feet above the platform, and would elevate higher than the platform as the operator raised the boom.

40.

As Welin and NYU student Andres Cardona began positioning the lift during daylight hours, they noticed overhead lines about 35 feet above the road that crossed over the road and were attached to large wooden poles. Despite the presence of overhead lines, Welin and Cardona placed the aerial lift in its general position directly below the overhead lines, knowing that they would move the lift into its precise position later when filming began.

41.

When filming was almost ready to begin around 9:30 p.m., NYU students White and Cardona began to give directions to Welin to raise and reposition the aerial lift from directly below the overhead power lines. At that same time, John Lamensdorf was placing a small metal

light stand around the back of the house for lighting since the area was totally dark. John was located in back of the house approximately 300 feet away from the aerial lift. John could not see the aerial lift from where he was located, nor could he hear any discussion about raising the lift into its filming position.

42.

To receive electrical power, the spotlight attached to the aerial lift platform had a drop cable that was connected to a distribution box on the ground, which in turn was connected to the 45KVA generator and then out to other lighting equipment. The light John Lamensdorf was positioning, which was either provided by NYU or obtained using NYU-allotted supply money, was also connected to the distribution box and the generator.

43.

With direction from NYU student Andres Cardona on the ground, Jason Welin began to raise and position the aerial lift with the spotlight and diffuser frame. NYU student Andrew White was further directing Cardona on where to position the lift for the "best light" on the front of the house.

44.

As Cardona was telling Welin via walkie-talkie to "Move left, right, up, down, etc.," the lift was approaching the overhead lines. While moving the aerial lift upwards, the diffuser frame made contact with the overhead lines and Cardona called up to Welin to stop.

45.

With further direction from students White and Cardona, Welin began moving the boom again toward the overhead lines. Seconds later, the diffuser frame struck the overhead power lines a second time, causing a 14,400-volt electrical surge to flow from the frame to the distribution box, to the generator, and then to the lights that were connected to the box. John

13

Lamensdorf, who was touching a metal light stand approximately 300 feet away, received a massive electrical shock. The electrical surge extinguished all lights and caused several fires around the property.

46.

One of the NYU students called 911 and Cardona administered CPR to John Lamensdorf while waiting for the paramedics to arrive.

47.

An ambulance did not arrive at the scene until approximately 37 minutes after the incident. John Lamensdorf was examined at the scene and then transported to Jasper Memorial Hospital. John had sustained high voltage electrical burns to his forehead, face, abdomen, right leg, left thigh, and left knee. At the emergency room, staff members intubated John and attempted to regenerate a heart rhythm. These efforts were unsuccessful and John Lamensdorf was pronounced dead at 10:42 p.m. on May 28, 2009.

48.

The day after the incident, Defendant NYU sent a team of people, including Defendant Sacks, to Monticello, Georgia to counsel its students and retrieve its film equipment for return to NYU.

## COUNT ONE
## NEGLIGENCE AGAINST NEW YORK UNIVERSITY

49.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 48 above as if they were fully restated verbatim herein.

50.

NYU student Stephen Simon's Senior Thesis film project was an NYU curricular activity. The project was Simon's entire focus for Professor Ezra Sacks' Advanced Production Workshop II course for the Spring 2009 semester. Defendant NYU, by and through its Professor Sacks, approved Simon's Senior Thesis film and provided Simon an allotment of money, use of NYU film equipment, access to NYU facilities, and coverage under NYU-provided insurance for his film project. NYU encourages Tisch undergraduate film students, as part of their NYU education, to volunteer to serve as crew members on each other's student films. The preparation for and the making of Simon's NYU film involved many hazardous and dangerous conditions that were reasonably foreseeable to Defendant NYU.

51.

For the reasons stated above, Defendant NYU owed to its students involved in the production of this curricular film activity, including Plaintiffs' decedent John Lamensdorf, the duty to exercise reasonable care under the circumstances to protect its students from unreasonable risks of harm and from known and foreseeable dangerous conditions.

52.

Defendant NYU breached its duties owed to Plaintiffs' decedent in at least the following particulars:

   a.  In failing to provide and require its students to complete technical safety training before leading or participating in filmmaking projects;

   b.  In failing to impose spending restrictions on rental equipment for undergraduate filmmaking projects;

c.  In failing to impose geographical shoot radius restrictions for undergraduate filmmaking projects;

d.  In failing to provide its undergraduate filmmaking students with a set of guidelines identifying the components of a safe film set environment;

e.  In failing to instruct its undergraduate filmmaking students on how to construct and prepare a safe film set environment; and,

f.  In failing to send an NYU representative with experience in the management of physical film production, to accompany its students and to oversee, manage, and supervise the NYU student film project.  The NYU representative would have had a duty to do the following things, at a minimum:

   i.    Hire a licensed electrician to oversee all electrical and lighting aspects of the production.

   ii.   Hire a qualified and experienced aerial lift operator who would have positioned the lift well away from all overhead power lines.

   iii.  Notify the appropriate entities in Monticello/Jasper County, Georgia that they would be present in the area and shooting a film, so that the local entities could implement any necessary precautions, such as relocating or insulating the overhead power lines.

   iv.   Implement an overall safety program for all on site to follow.

   v.    Instruct the students as to the proper and safe methods of using the equipment.

vi.    Continuously monitor and supervise the site and its students for potential hazards and dangers.

53.

As a direct and proximate result of the breaches of duty by Defendant New York University, John Hunt Lamensdorf suffered fatal injuries and incurred damages, including medical and other necessary expenses, pre-death mental and physical pain and suffering, and funeral expenses.

54.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendant NYU, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

**COUNT TWO**
**NEGLIGENCE AGAINST NYU PROFESSOR EZRA M. SACKS**

55.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if they were fully restated verbatim herein.

56.

NYU student Stephen Simon's Senior Thesis film project was an NYU curricular activity.  The project was Simon's entire focus for Defendant Ezra Sacks' Advanced Production Workshop II course for the Spring 2009 semester.  Throughout that semester, Defendant Sacks reviewed several versions of Stephen Simon's production plan for his Senior Thesis film project. Defendant Sacks knew that Simon's NYU film project included traveling to the state of Georgia to shoot the film.  Defendant Sacks knew that the budget for Simon's NYU film project was in

excess of $20,000. Defendant Sacks knew that Simon's NYU film project included using multiple pieces of large, complex, and dangerous equipment. And, consistent with NYU's policy of encouraging Tisch undergraduate film students to volunteer to serve as crew members on each other's student films, Defendant Sacks knew that Simon's NYU film project included a large film crew of many NYU undergraduate students who would travel unsupervised to the state of Georgia to shoot the film. Defendant Sacks approved Simon's Senior Thesis film project, which allowed Simon to obtain an allotment of money from NYU, use of NYU film equipment, access to NYU facilities, and coverage under NYU-provided insurance for his film project. Moreover, the preparation for and the making of Simon's NYU film involved many hazardous and dangerous conditions that were reasonably foreseeable to Defendant Sacks.

57.

For the reasons stated above, Defendant Sacks owed to the students involved in the production of this curricular activity, including Plaintiffs' decedent John Lamensdorf, the duty to exercise reasonable care under the circumstances to protect its students from unreasonable risks of harm and from known and foreseeable dangerous conditions.

58.

Defendant Ezra Sacks breached the duties he owed to Plaintiffs' decedent in at least the following particulars:

    a.  In failing to require the Simon NYU film crew students to complete a technical safety training course before participating in the Simon NYU film;

    b.  In failing to impose spending restrictions on rental equipment for the Simon NYU film;

c.  In failing to impose geographical shoot radius restrictions for the Simon NYU film;

d.  In failing to provide the Simon NYU film crew students with a set of guidelines identifying the components of a safe film set environment;

e.  In failing to instruct the Simon NYU film crew students on how to construct and prepare a safe film set environment; and,

f.  In failing to attend this Georgia film shoot and/or to send an NYU representative with experience in the management of physical film production, to accompany its students and to oversee, manage, and supervise the Simon NYU film project.  The NYU representative would have had a duty to do the following things, at a minimum:

    i.  Hire a licensed electrician to oversee all electrical and lighting aspects of the production.

    ii.  Hire a qualified and experienced aerial lift operator who would have positioned the lift well away from all overhead power lines.

    iii.  Notify the appropriate entities in Monticello/Jasper County, Georgia that they would be present in the area and shooting a film, so that the local entities could implement any necessary precautions, such as relocating or insulating the overhead power lines.

    iv.  Implement an overall safety program for all on site to follow.

    v.  Instruct the students as to the proper and safe methods of using the equipment.

vi.    Continuously monitor and supervise the site and its students for

potential hazards and dangers.

59.

As a direct and proximate result of the breaches of duty by Defendant Ezra M. Sacks, John Hunt Lamensdorf suffered fatal injuries and incurred damages, including medical and other necessary expenses, pre-death mental and physical pain and suffering, and funeral expenses.

60.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendant Sacks, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

## COUNT THREE
### NEGLIGENCE AGAINST NYU STUDENTS STEPHEN MICHAEL SIMON, ANDREW WHITE, ANDRES CARDONA, AND RACHAEL FUNG

61.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60 above as if they were fully restated verbatim herein.

62.

As crew members on a film set where large pieces of motorized equipment and massive amounts of electrical power were in use, NYU students Stephen Michael Simon, Andrew White, Andres Cardona, and Rachael Fung owed to those on the film set, including Plaintiffs' decedent John Lamensdorf, the duty to exercise reasonable care under the circumstances to protect others from unreasonable risks of harm and from known and foreseeable dangerous conditions.

63.

Defendants Simon, White, Cardona, and Fung breached their duties they owed to Plaintiffs' decedent in at least the following particulars:

a.  In failing to hire a licensed electrician to oversee all electrical and lighting aspects of the production;

b.  In failing to hire a qualified and experienced aerial lift operator who would have positioned the lift well away from all overhead power lines;

c.  In hiring a person to operate the aerial lift and assist with electrical and lighting activities who had no formal training to operate the lift, and had no formal electrical license, training, background, or experience;

d.  In renting equipment they were not qualified to safely operate;

e.  In placing the aerial lift near overhead power lines;

f.  In maneuvering the aerial lift around power lines in the dark; and,

g.  In striking the energized power lines twice while operating the lift.

64.

As a direct and proximate result of the breaches of duty by Stephen Michael Simon, Andrew White, Andres Cardona, and Rachael Fung, John Hunt Lamensdorf suffered fatal injuries and incurred damages, including medical and other necessary expenses, pre-death mental and physical pain and suffering, and funeral expenses.

65.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendants Simon, White, Cardona, and Fung, in an amount to be proven at trial, for the full

value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and last medical and funeral expenses.

## COUNT FOUR
## NEGLIGENCE AGAINST JASON WELIN

66.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 65 above as if they were fully restated verbatim herein.

67.

As a crew member on a film set where large pieces of motorized equipment and massive amounts of electrical power were in use, and as the crew member who was operating and positioning a large aerial lift, Defendant Jason Welin owed to those on the film set, including Plaintiffs' decedent John Lamensdorf, the duty to exercise reasonable care under the circumstances to protect others from unreasonable risks of harm and from known and foreseeable dangerous conditions.

68.

Defendant Welin breached the duties he owed to Plaintiffs' decedent in at least the following particulars:

    a.  In accepting employment as a gaffer/electrician when he was not qualified to act as such;

    b.  In placing the aerial lift near overhead power lines;

    c.  In attempting to operate the aerial lift near overhead power lines when he was not licensed as an electrician, or trained, experienced, or knowledgeable to do so;

    d.  In attempting to maneuver the aerial lift around overhead power lines in the dark; and,

22

e.   In striking the energized power lines twice while operating the lift.

69.

As a direct and proximate result of the breaches of duty by Defendant Welin, John Hunt Lamensdorf suffered fatal injuries and incurred damages, including medical and other necessary expenses, pre-death mental and physical pain and suffering, and funeral expenses.

70.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendant Welin, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

## COUNT FIVE
## VICARIOUS LIABILITY OF NEW YORK UNIVERSITY

71.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 70 above as if they were fully restated verbatim herein.

72.

At all relevant times, Ezra Sacks, Stephen Simon, Andres Cardona, Andrew White, Rachael Fung, and Jason Welin were employees and/or agents of Defendant NYU with respect to the incident-in-suit, and these individuals committed negligent acts and omissions within the course and scope of their employment and/or agency with Defendant NYU.  Accordingly, Defendant NYU is liable for the negligent acts and omissions of Sacks, Simon, Cardona, White, Fung, and Welin under the theory of *respondeat superior*.

73.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendant NYU, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

**COUNT SIX**
**NEGLIGENCE AGAINST PEN PALS PRODUCTIONS AND STEPHEN ROBERT SIMON**

74.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 73 above as if they were fully restated verbatim herein.

75.

As the production company of a film with a production crew of undergraduate college students, where large, complex, and dangerous pieces of motorized equipment and massive amounts of electrical power were in use on the film set, Defendants Pen Pals Productions and Stephen Robert Simon owed to those on the film set, including Plaintiffs' decedent John Lamensdorf, the duty to exercise reasonable care under the circumstances to protect others from unreasonable risks of harm from known and foreseeable dangerous conditions.

76.

Defendants Pen Pals Productions and Stephen Robert Simon violated the duties they owed to Plaintiff and were negligent in at least the following particulars:

a. In failing to hire a licensed electrician to oversee all electrical and lighting aspects of the production;

b. In failing to hire a qualified and experienced aerial lift operator who would have positioned the lift well away from all overhead power lines;

24

   c.   In hiring a person to operate the aerial lift and assist with electrical and lighting activities who had no formal training to operate the lift, and had no formal electrical license, training, background, or experience;

   d.   In failing to notify the appropriate entities in Monticello/Jasper County, Georgia that they would be present in the area and shooting a film, so that the local entities could implement any necessary precautions, such as relocating or insulating the overhead power lines;

   e.   In failing to notify the local power company that they would be working in the vicinity of overhead power lines;

   f.   In failing to implement an overall safety program;

   g.   In failing to monitor the site and the crew for potential hazards and dangers; and,

   h.   For the negligent acts and omissions of its agents and employees in positioning and moving the aerial lift, and touching the overhead electric power lines resulting in the electrocution death of John Lamensdorf.

77.

As a direct and proximate result of the breaches of duty by Defendants Pen Pals Productions and Stephen Robert Simon, John Hunt Lamensdorf suffered fatal injuries and incurred damages, including medical and other necessary expenses, pre-death mental and physical pain and suffering, and funeral expenses.

78.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendants Pen Pals Productions and Stephen Robert Simon, in an amount to be proven at trial,

for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

## COUNT SEVEN
## VICARIOUS LIABILITY OF PEN PALS PRODUCTIONS

79.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 78 above as if they were fully restated verbatim herein.

80.

At all relevant times, Stephen Simon, Andres Cardona, Andrew White, Rachael Fung, and Jason Welin were employees and/or agents of Defendant Pen Pals Productions with respect to the incident-in-suit, and these individuals committed negligent acts and omissions within the course and scope of their employment and/or agency with Defendant Pen Pals Productions. Accordingly, Defendant Pen Pals Productions is liable for the negligent acts and omissions of Simon, Cardona, White, Fung, and Welin under the theory of *respondeat superior*.

81.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendant Pen Pals Productions, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

## COUNT EIGHT
## NEGLIGENCE AGAINST NES RENTALS

82.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 81 above as if they were fully restated verbatim herein.

83.

When renting out the Genie Z45/25RT aerial lift for the NYU film project, Defendant NES Rentals owed to those on the film set and those who may be affected by the rental of its equipment, including Plaintiffs' decedent John Lamensdorf, the duty to exercise reasonable care to train the renter on how to safely operate and position the aerial lift, to provide written materials explaining the safe use of its rented equipment, and to ensure that the renter clearly understood how to safely operate the lift before renting it out.

84.

Defendant NES Rentals violated the duties it owed to Plaintiff and was negligent in at least the following particulars:

a.    In renting the Genie Z45/25RT aerial lift to inexperienced college students;

b.    In failing to provide Raquel Cedar and/or anyone else involved with the film crew with any Operator responsibilities before renting the aerial lift to the college students;

c.    In failing to ensure that Ms. Cedar and/or anyone else involved with the film crew understood how to safely operate and position the Genie Z45/25RT aerial lift before renting the lift to the college students;

d.    In failing to train Ms. Cedar and/or anyone else involved with the film crew how to safely operate the Genie Z45/25RT aerial lift; and

e.    In failing to offer Ms. Cedar and/or anyone else involved with the film crew any training on the Genie Z45/25RT aerial lift.

85.

As a direct and proximate result of the breaches of duty by Defendant NES Rentals, John Hunt Lamensdorf suffered fatal injuries and incurred damages, including medical and other necessary expenses, pre-death mental and physical pain and suffering, and funeral expenses.

86.

By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages from Defendant NES Rentals, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

**<u>COUNT NINE</u>**
**COMBINED AND CONCURRING CONDUCT CAUSING INJURY AND DEATH**

87.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 86 above as if they were fully restated verbatim herein.

88.

The conduct of Defendants New York University, Ezra M. Sacks, Stephen Michael Simon, Andrew White, Andres Cardona, Rachael Fung, Jason Welin, Pen Pals Productions, Stephen Robert Simon, and NES Rentals combined and concurred to cause the injuries and death of John Hunt Lamensdorf.

89.

As a direct and proximate result of the combined and concurring conduct of Defendants New York University, Ezra M. Sacks, Stephen Michael Simon, Andrew White, Andres Cardona, Rachael Fung, Jason Welin, Pen Pals Productions, Stephen Robert Simon, and NES Rentals, these Defendants are jointly and severally liable to Plaintiffs, thereby entitling Plaintiffs to an

award of compensatory damages from in favor of Plaintiffs and against Defendants, and each of them, in an amount to be proven at trial, for the full value of the life of the decedent John Hunt Lamensdorf, as well as for John Lamensdorf's pre-death pain and suffering, and medical and funeral expenses.

**COUNT TEN**
**PUNITIVE DAMAGES AGAINST DEFENDANTS NEW YORK UNIVERSITY, SACKS,
PEN PALS PRODUCTIONS, and STEPHEN ROBERT SIMON**

90.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 89 above as if they were fully restated verbatim herein.

91.

Defendant NYU's conduct, as described in this Complaint generally and in paragraphs 50-52 specifically, exhibits an entire lack of care and a conscious disregard for the safety of its students and others participating in the NYU film project that resulted in the death of Plaintiffs' decedent John Lamensdorf.

92.

Defendant Ezra Sacks' conduct, as described in this Complaint generally and in paragraphs 56-58 specifically, exhibits an entire lack of care and a conscious disregard for the safety of the NYU students and others participating in the NYU film project that resulted in the death of Plaintiffs' decedent John Lamensdorf.

93.

Defendants Pen Pals Productions' and Stephen Robert Simon's conduct, as described in this Complaint generally and in paragraphs 75-76 specifically, exhibits an entire lack of care and

a conscious disregard for the safety of those participating in the NYU film project that resulted in the death of Plaintiffs' decedent John Lamensdorf.

94.

As a direct and proximate result of the wrongful conduct of Defendants NYU, Sacks, Pen Pals Productions, and Stephen Robert Simon, Plaintiff is entitled to a separate judgment for punitive damages against each of these defendants, to deter similar conduct in the future and to punish these Defendants for their wrongful acts, in separate amounts for each Defendant to be determined by the enlightened conscience of the finder of fact.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray and demand, as follows:

1. That Process and Summons issue, as provided by law, requiring Defendants to appear and answer Plaintiffs' Complaint;

2. That service be had upon Defendants as provided by law;

3. Under Count One, that the Court award and enter a judgment in favor of Plaintiffs and against Defendant NYU for compensatory damages in an amount to be proven at trial;

4. Under Count Two, that the Court award and enter a judgment in favor of Plaintiffs and against Defendant Ezra Sacks for compensatory damages in an amount to be proven at trial;

5. Under Count Three, that the Court award and enter a judgment in favor of Plaintiffs and against Defendants Stephen Michael Simon, White, Cardona, and/or Fung for compensatory damages in an amount to be proven at trial;

6.    Under Count Four, that the Court award and enter a judgment in favor of Plaintiffs and against Defendant Welin for compensatory damages in an amount to be proven at trial;

7.    Under Count Five, that the Court award and enter a judgment in favor of Plaintiffs and against Defendant NYU for compensatory damages in an amount to be proven at trial;

8.    Under Count Six, that the Court award and enter a judgment in favor of Plaintiffs and against Defendants Pen Pals Productions and Stephen Robert Simon for compensatory damages in an amount to be proven at trial;

9.    Under Count Seven, that the Court award and enter a judgment in favor of Plaintiffs and against Defendant Pen Pals Productions for compensatory damages in an amount to be proven at trial;

10.    Under Count Eight, that the Court award and enter a judgment in favor of Plaintiffs and against Defendant NES Rentals for compensatory damages in an amount to be proven at trial;

11.    Under Count Nine, that the Court award and enter a judgment in favor of Plaintiffs and against all Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial;

12.    Under Count Ten, that Plaintiffs be awarded punitive damages against Defendants NYU, Sacks, Pen Pals Productions, and Stephen Robert Simon separately, each in an amount to be determined by a jury of Plaintiffs' peers that is sufficient to punish and deter;

13.    That Plaintiffs have a trial by a jury as to all issues; and,

14.    That Plaintiffs have such other and further relief as the Court may deem just and

proper.


This _____ day of December, 2009.

Respectfully submitted,


By: s/ Steven R. Thornton
Steven R. Thornton
Georgia State Bar No. 710630
THORNTON LAW FIRM, P.C.
Two Ravinia Drive, Suite 500
Atlanta, Georgia 30346
Tel: (678) 855-7148
Fax: (678) 855-7149
E-mail: steve@thornton-lawfirm.com


By: s/ Martin A. Rosen (with express permission)
Martin A. Rosen
Florida State Bar No. 586640
MARTIN A. ROSEN, P.A.
Post Office Box 3069
Placida, Florida 33946
Tel: (941) 698-1906
E-mail: marosenlaw@yahoo.com

Attorneys for Plaintiffs