IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MICHAEL LAMENSDORF and KATHY LAMENSDORF, Individually As Parents of JOHN HUNT LAMENSDORF, Deceased, and As Personal Representative(s) of the Estate of JOHN HUNT LAMENSDORF, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK UNIVERSITY, EZRA M. SACKS, STEPHEN MICHAEL SIMON, ANDREW WHITE, ANDRES CARDONA, RACHAEL FUNG, JASON WELIN, PEN PALS PRODUCTIONS, LLC, STEPHEN ROBERT SIMON, and NES RENTALS HOLDING, INC.,<br><br>Defendants.<br>_____ | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Civil Action No. 5:09-CV-424 (HL)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**ORDER**

Currently before the Court is Defendants New York University and Ezra M. Sacks' Motion to Dismiss, or in the alternative, Transfer Venue (Doc. 11). For the reasons discussed herein, the Motion to Dismiss is granted.

**I.    BACKGROUND**

This case arises out of the tragic death of John Hunt Lamensdorf ("John"), a graduate of Defendant New York University's ("NYU") Tisch School of the Arts. Plaintiffs allege that Defendants' negligence caused John's death in Monticello,

Georgia on May 28, 2009, while he served as a member of a film production crew for <u>LOVELY LYING LIPS</u>, <u>A Song of Experience</u>, which was written and directed by Defendant Stephen M. Simon ("Simon"), another NYU student.

During the spring semester of 2009, Defendant Ezra M. Sacks ("Sacks") taught a course at NYU called Advanced Production Workshop II, which is an upper-level elective film course. John, Simon, and other students enrolled the workshop. Simon had previously submitted several preliminary drafts of his screenplay to Sacks for review, and prepared a film production project proposal, which was eventually accepted. Simon secured a $1,600 financing allotment from NYU. The estimated budget for the film was $33,000. In May of 2009, Simon advised Sacks that he and his film crew were going to shoot the film in Georgia. John and other workshop students volunteered to help Simon with the film project. John held the position of grip.

John, Simon, and the other crew members traveled to Monticello, Georgia, where they began filming at an abandoned house. Neither Sacks nor any other NYU teacher or official accompanied the students to Georgia. They also did not notify anyone in Monticello that the students were coming to make a film. On May 28, 2009, while positioning a metal light stand, John was electrocuted when a diffuser frame attached to a metal stand on a lift platform struck overhead power lines, causing a 14,400-volt electrical surge to flow from the frame to a distribution box, to a generator, and then to the lights that were connected to the box.

**II.   ANALYSIS**

NYU and Sacks have moved for dismissal from the case, on the basis that this Court neither has subject matter nor personal jurisdiction over them. In the alternative, they contend that venue is not proper in this Court and the case should be transferred to the Southern District of New York.

**A.   Subject Matter Jurisdiction**

NYU and Sacks initially argue that there is no subject matter jurisdiction because Plaintiffs have failed to provide the place of citizenship of John, on which their own citizenship for purposes of this lawsuit would be based. Under 28 U.S.C. § 1332(c), as the personal representatives of John's estate, Plaintiffs are deemed to be citizens of the same state as John. NYU and Sacks contend that there is a question of whether John was a citizen of Florida, the state where his parents live, or New York, the state where he went to college. If John was a citizen of New York, there would be no diversity of citizenship, as NYU and Sacks are both New York citizens.

"Citizenship" and "domicile" are synonymous for purposes of diversity jurisdiction. Mitchell v. Mackey, 915 F.Supp. 388, 391 (M.D. Ga. 1996) (citation omitted). Residence, on the other hand, is not the same as either citizenship or domicile. Id. (citation omitted). A person's domicile is generally the place of "his true, fixed, and permanent home and principal establishment, and to which he has the

intention of returning whenever he is absent therefrom. . . ." Id. (quoting Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974)).

Plaintiffs have presented affidavits setting out their position that John was a Florida citizen. They aver that while John was an undergraduate student at NYU, he held a Florida driver's license, was registered to vote in Florida, held a bank account at a Florida branch of Wachovia, received all NYU correspondence at his parents' Florida home, and received all magazine subscriptions there as well. Plaintiffs also state that they supported John financially while he was at NYU, that John always returned to Florida during school breaks, and that John planned to return to Florida after traveling during the summer after his graduation.

NYU and Sacks, on the other hand, point to the fact John resided in New York City while at NYU, along with John's obituary, which states that he was "residing in New York City," as evidence that John was actually a New York citizen, not a Florida citizen. They also rely on an unauthenticated document which states that John's Florida driver's license expired on November 17, 2008.

NYU and Sacks complain that Plaintiffs have not provided any evidence that corroborates their statements that John considered himself a Florida citizen or that he intended to return to Florida from New York following his graduation. The Court, however, questions what sort of evidence NYU and Sacks expect Plaintiffs to present on that issue. In a perfect situation, John would be able to tell everyone what his intentions were. Yet we all know that is impossible. In most situations this sort

of information will not be available in documentary form - most people probably will not create a writing reflecting their intentions to be domiciled in place A or B.

In any event, John residing in New York for the four years he was at NYU and being listed as residing in New York in his obituary do not lead to a conclusion that he was domiciled in New York. "For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient." Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974).[1]

Typically, a domicile is presumed to continue until it is shown to be changed. *See* Gutierrez v. Fox, 141 F.3d 425, 427 (2d Cir. 1998). There is no dispute that prior to matriculating at NYU, John was a Florida citizen. At this time, no evidence has been presented to support a conclusion that John changed his domicile to New York. John was a Florida citizen at the time of his death, which makes Plaintiffs Florida citizens for purposes of this action in their capacities as personal representatives of John's estate. Diversity jurisdiction has been established.

### B.     Personal Jurisdiction

NYU and Sacks next argue that the Court lacks personal jurisdiction over them. Since NYU and Sacks are both non-resident defendants, the Georgia long-arm statute is the means by which this Court could have personal jurisdiction over them. "A federal court sitting in diversity undertakes a two-step inquiry in determining

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.  *See* Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

5

whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). "[I]n assessing the propriety of the exercise of personal jurisdiction, courts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

"A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction." Sol Melia, SA v. Brown, 301 Ga. App. 760, --- S.E.2d ---, *1 (2009). Id.

> [W]hen the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence.

Id. (quoting Beasley v. Beasley, 260 Ga. 419, 420, 396 S.E.2d 222 (1990)).

**1.     O.C.G.A. § 9-10-91**

The Georgia long-arm statute, O.C.G.A. § 9-10-91, provides a number of situations under which a Georgia court can have jurisdiction over a non-resident defendant. Most are not applicable to this case. According to Plaintiffs, the Court has jurisdiction over NYU and Sacks under O.C.G.A. § 9-10-91(2), which provides that a Georgia court may exercise personal jurisdiction over a non-resident defendant if the defendant "commits a tortious act or omission within Georgia other than defamation."

Plaintiffs contend in their complaint and amended complaint that the negligence of NYU and Sacks, along with the other Defendants, resulted in John's death. Plaintiffs state that NYU was negligent in a number of ways, including failing to provide and require its students to complete technical safety training before leading or participating in filmmaking projects, failing to impose spending restrictions on rental equipment for undergraduate filmmaking projects, failing to send to Georgia an NYU representative with experience in the management of physical film production, failing to accompany its students to Georgia, and failing to oversee, manage, and supervise the film project. Plaintiffs claim Sacks was negligent in several ways, including failing to require the film crew students to complete a technical safety training course, failing to impose geographical shoot radius restrictions for the film, and failing to attend the film shoot. In addition, Plaintiffs contend that Sacks and others were employees and/or agents of NYU, and as they

committed negligent acts and omissions within the course and scope of their employment and/or agency with NYU, NYU is responsible for their negligent acts under the theory of respondeat superior.

NYU and Sacks argue that jurisdiction under § 9-10-91(2) is improper because they have not committed any tortious act or omission in Georgia. Instead, they argue, the tortious conduct and omissions Plaintiffs allege in connection with NYU and Sacks all occurred in New York. Plaintiffs argue in response that NYU and Sacks' failure to supervise the film project in Georgia is a tortious omission that occurred in Georgia.

NYU and Sacks contend that they are required to commit an act within Georgia for jurisdiction to be proper under § 9-10-91(2). While that might be true for the "commits a tortious act" part of the statute, Plaintiffs allege that NYU and Sacks' <u>omission</u>, not supervising the filmmaking, caused the injury. The Court's research has turned up a dearth of cases where a plaintiff alleged that an omission within Georgia caused an injury. Construing the facts in the light most favorable to Plaintiffs, however, the Court finds that jurisdiction over NYU and Sacks under subsection (2) of the long-arm statute is appropriate. It is at least arguable that by not coming to Georgia and supervising the filming, NYU and Sacks "commit[ted] a tortious omission within Georgia."[2]

---

[2] Plaintiffs also argue that NYU is subject to personal jurisdiction in Georgia because its agents committed negligent acts in Georgia. The purported agents are students and Defendants Andrew White, Andres Cardona, and Rachael Fung. There is, however, no

8

**2. Due process**

Even though § 9-10-91(2) permits jurisdiction over NYU and Sacks, the Court can exercise personal jurisdiction over them only insofar as the exercise of personal jurisdiction comports with constitutional due process. Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames, 279 Ga. 672, 674, 620 S.E.2d 352 (2005). The Due Process Clause of the Fourteenth Amendment requires "that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." Diamond Crystal Brands, Inc., 593 F.3d at 1267 (quotation omitted). This means states may exercise jurisdiction over only those who have established "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Id. (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984) (alteration in original)) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)).

Plaintiffs contend that the Court may exercise specific jurisdiction over NYU and Sacks.[3] Specific jurisdiction may be exercised "over a defendant in a suit arising

---

authority for the proposition that a student can be considered an agent of a school, see Chamlee v. Henry County Bd. of Educ., 239 Ga. App. 183, 188, 521 S.E.2d 78 (1999), and Plaintiffs have not identified any such authority for the Court's benefit.

[3] Georgia courts are also permitted to exercise general jurisdiction over non-resident defendants. When a court exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, it is said to be exercising general jurisdiction over the defendant. Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 521, 631 S.E.2d 734, 739 (2006). Plaintiffs do not contend that the Court can exercise general jurisdiction over either NYU or Sacks.

out of or related to the defendant's contacts with the forum." <u>Helicopteros</u>, 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. The minimum contacts test for specific jurisdiction has three elements: (1) the defendant must have contacts related to or giving rise to the plaintiff's cause of action; (2) the defendant must, through those contacts, have purposefully availed itself of forum benefits; and (3) the defendant's contact with the forum must be such that it could reasonably anticipate being haled into court there. <u>Fraser v. Smith</u>, 594 F.3d 842, 850 (11th Cir. 2010).

In order to be subjected to specific jurisdiction, the nonresident "must have 'purposefully availed' itself of the privilege of conducting activities - that is, purposefully establishing contacts - in the forum state and there must be a sufficient nexus between those contacts and the litigation." <u>Diamond Crystal Brands, Inc.</u>, 593 F.3d at 1267 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185 (1985)). The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." <u>Abernathy v. Abernathy</u>, 267 Ga. 815, 826, 482 S.E.2d 265, 273 (1997) (Sears, J., dissenting) (internal citations and quotation marks omitted).

Plaintiffs' response to NYU and Sacks' Motion does not clearly delineate the actions taken by NYU and Sacks by which they purposefully availed themselves of the benefits and protections of Georgia's laws. As the Eleventh Circuit has made

clear, the purposeful acts the court must consider when determining whether minimum contacts exist are acts committed by the nonresident defendant itself.

> Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state. Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is *not* the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum.

Madara v. Hall, 916 F.2d 1510, 1516-17 (11th Cir. 1990) (internal citations omitted) (emphasis in original).

Reading Plaintiffs' response broadly, they argue that NYU and Sacks purposefully availed themselves of this forum because (1) Simon submitted at least eight drafts of his script to Sacks; (2) they knew the proposed budget of the film to be $33,000; (3) they knew Simon was gathering a film crew composed of NYU students; (4) they knew the students were traveling to Georgia to shoot the film; (5) NYU provided some funding for the film; (6) NYU provided insurance for the film; and (7) NYU provided equipment for the film.

NYU and Sacks tendered three affidavits in support of their Motion to Dismiss, two from Robert S. Kivetz, the Vice President of Campus Services for NYU, and one from Sacks. Plaintiffs submitted two affidavits in support of their response to the Motion to Dismiss, but those both related to John's citizenship, and do not address the averments made in Kivetz's and Sacks' affidavits.

The evidence before the Court with regard to NYU is as follows:

- NYU is a public benefit, non-profit corporation organized under the laws of New York.

- NYU's headquarters and principal place of business are located in New York.

- NYU has no colleges or schools located in Georgia.

- NYU does not do business in Georgia and does not regularly solicit business from Georgia residents.

- NYU is not licensed to do business in Georgia.

- NYU does not maintain an office in Georgia.

- NYU has no registered agents, officers, or employees located within Georgia.

- NYU has no corporate affiliates, subsidiaries, or other related entities located in Georgia.

- NYU does not own any property, bank accounts, or other assets in Georgia.

- NYU obtains limited revenue (0.08% of its nationwide total) from the sale of goods in Georgia from its bookstore website located in New York.

- NYU obtains less than 1% of its revenue from United States and international royalties from trademarks from an independent contractor located in Georgia.

- NYU has made purchases of goods and services totaling less than 4% of its total purchases in Georgia.

- Over the last ten years, NYU has not caused any tortious injury or damage by any act or omission in Georgia.

- Some of NYU's athletic teams occasionally participate in events in Georgia.

- NYU does not advertise in any publications directly targeting Georgia.

- Over the past ten years, only 0.7% of the NYU student population came from Georgia.

The evidence before the Court with regard to Sacks is as follows:

- Sacks is a New York citizen.

- Sacks is an Associate Arts Professor at NYU, and his office is located in New York.

- Sacks has no representatives in Georgia.

- Sacks does not own any property, bank accounts, or other assets in Georgia.

- Sacks does not obtain revenue from any goods or services sold in Georgia.

- Sacks has never contracted to supply goods or services in Georgia.

- Sacks has no license associated with Georgia.

- Prior to the accident involving John, Sacks had never visited Georgia. His only visit to Georgia came after John's accident, when he flew to Atlanta at NYU's behest to meet the other NYU students. He did not leave the airport, but immediately flew back to New York.

The Court finds that NYU and Sacks have not purposefully availed themselves of the benefits and protections of Georgia's laws. None of the activities cited by Plaintiffs were activities done by NYU and Sacks themselves and directed at Georgia. The Court does not know how reviewing a script in New York (a script that makes no reference to Georgia), knowing the proposed budget of the film, or

13

knowing Simon was gathering a film crew could possibly be construed as acts by which NYU and Sacks purposefully availed themselves of the benefits and protections of Georgia's laws. As for knowing Simon intended to shoot the film in Georgia and providing financing, equipment, and insurance, those activities still are not things NYU and Sacks did themselves that were geared toward Georgia. Knowing that Simon was going to Georgia is not enough for the Court to find that NYU and Sacks had minimum contacts with Georgia. As the Supreme Court stated in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566 (1980), foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause. The situation before the Court is just like the one warned against by the Eleventh Circuit in Madara, as NYU and Sacks may have been able to foresee that Simon's or the other crew members' actions could affect Georgia, but what counts is whether NYU and Sacks' own purposeful acts would have some effect in Georgia.

     This is not a case where NYU and Sacks were ever physically present in Georgia. The fact that Sacks came to the Atlanta airport the day after the accident at NYU's behest does not create a contact for due process purposes. *See* Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered.") This is not a case where NYU or Sacks had any telephonic or mail contacts with anyone in Georgia. *See* First Nat'l Bank of Ames v. Innovative Clinical

& Consulting Servs., Inc., 280 Ga. App. 337, 338, 634 S.E.2d 88 (2006). This is not a case where NYU or Sacks negotiated or entered into a contract in Georgia or with a Georgia citizen. *See* Diamond Crystal Brands, Inc., 593 F.3d at 1268-70; Best v. Raley Records, No. 7:06-CV-23(HL), 2006 WL 1890204, at *2 (M.D. Ga. July 10, 2006). And this is not a case where NYU or Sacks reached into Georgia to solicit or initiate business, or one where they deliberately engaged in significant or long-term activities in the state. *See* Burger King, 471 U.S. at 475-76, 105 S.Ct. at 2184. The Court is instead faced with two Defendants from New York who really have no connections with Georgia and have not directed any activities at Georgia. There has been no purposeful availment; therefore, NYU and Sacks are not subject to personal jurisdiction in Georgia for this cause of action.

There are other considerations outlined by the Supreme Court which "may in exceptional cases serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Madara, 916 F.2d at 1519 (citing Burger King, 471 U.S. at 477, 105 S.Ct. at 2184). These considerations include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several states in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477, 105 S.Ct at 2184 (quoting World-Wide Volkswagen Corp., 444 U.S. at 292, 100

S.Ct. at 564). The Court, however, finds that these considerations do not justify a lesser showing of minimum contacts.

## III.   CONCLUSION

Defendants New York University and Ezra M. Sacks' Motion to Dismiss (Doc. 11) is granted. These Defendants are dismissed from the case. In light of the dismissal, it is not necessary for the Court to rule on the Motion to Transfer Venue.

**SO ORDERED**, this the 24th day of March, 2010.

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh