IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MICHAEL LAMENSDORF and KATHY LAMENSDORF, Individually as Parents of JOHN HUNT LAMENSDORF, Deceased, and as Personal Representative(s) of the Estate of JOHN HUNT LAMENSDORF, Deceased, <br><br>  Plaintiffs, <br><br> v. <br><br> JASON WELIN, PEN PALS PRODUCTIONS, LLC, and NES EQUIPMENT SERVICES CORPORATION, <br><br>  Defendants. <br><br> NES EQUIPMENT SERVICES CORPORATION, <br><br>  Crossclaim Plaintiff, <br><br> v. <br><br> PEN PALS PRODUCTIONS, LLC, <br><br>  Crossclaim Defendant. | CIVIL ACTION NO. 5:09-CV-424-MTT |

## ORDER

This matter is before the Court on Defendant/Crossclaim Plaintiff NES Equipment Services Corporation's ("NES") Motion for Leave to Amend its Answer and Defenses (Doc. 106) (the "Motion") to incorporate its previously filed Crossclaim (Doc. 96) against Defendant/Crossclaim Defendant Pen Pals Productions, LLC ("Pen Pals"). For the reasons set forth below, the Motion is **GRANTED**.

*A. Factual and Procedural Background*

This cause of action arises from the electrocution of John Hunt Lamensdorf on May 28, 2009, in Monticello, Georgia while he was working on the film set of "Lovely Lying Lips," a film being made in conjunction with a class taught at New York University. The Plaintiffs, Michael and Kathy Lamensdorf, individually and as parents of John Hunt Lamensdorf, and Michael Lamensdorf, as personal representative of the estate of John Hunt Lamensdorf, allege that their son sustained fatal injuries due to the negligent acts of Defendants (or former Defendants) Andrew White, Andres Cardona, Rachel Fung, Jason Welin, Stephen Michael Simon ("Simon"), Stephen Robert Simon (Simon's father), Pen Pals (a Georgia limited liability company organized by Simon and his father), and NES.

On May 27, 2009, Simon entered into a Rental Agreement (Doc. 106, Exhibit A) with NES for the rental of an aerial lift.[1] The operation of this lift on the film set caused the incident that resulted in John Lamensdorf's death. In their Second Amended Complaint (Doc. 110), the Plaintiffs allege that NES negligently rented the aerial lift for use on the film set and that Simon, Andres Cardona, Rachel Fung, and Jason Welin were all agents of Pen Pals and thus Pen Pals is vicariously liable for their negligence.[2]

Discovery commenced in April 2010, and on June 11, 2010, NES filed a Crossclaim (Doc. 57) against Simon based on alleged indemnity obligations in the

---

[1] The Court recognizes that the primary issue to be resolved in the Crossclaim is whether Simon rented the aerial lift in his individual capacity or as an agent or representative of Pen Pals. However, that issue is not presently before the Court. Instead, the sole issue before the Court is whether to grant NES' Motion for Leave to Amend its Answer and Defenses. Because Simon was the individual who physically rented the lift from NES and because the merits of the Crossclaim are not being considered at this time, the Court will refer to Simon as the renter of the aerial lift.

[2] Each of these Defendants, with the exception of Jason Welin, have settled their claims with the Plaintiffs and have been dismissed.

Rental Agreement, which, in summary, provide that the "customer" agrees to indemnify and hold harmless NES against any costs, claims, or suits that arise out of or relate to the use or operation of the rental equipment. According to NES, even though NES "believed that the aerial lift was likely rented by Simon in his capacity as agent for Pen Pals, thereby making Pen Pals the actual '[c]ustomer,'" because Simon's name was printed on the Rental Agreement as the "customer," NES originally asserted its Crossclaim against him.

On August 3, 2010, and August 10, 2010, respectively, the parties conducted the depositions of Tim Schulte, the NES employee who rented the aerial lift to Simon, and Simon. Although it is not clear whether Pen Pals anticipated that the Crossclaim would ultimately be filed against it, it is clear that during these depositions, counsel for Pen Pals thoroughly explored the issue of the identity of the "customer" on the Rental Agreement.

On August 20, 2010, NES tendered its defense (Doc. 106-1, Exhibit C) to Pen Pals, claiming that, based on evidence developed through discovery, "it appears that [Simon] may have rented the subject aerial lift from NES in his capacity as an employee, principal and/or officer in Pen Pals…. As Such, NES requests that Pen Pals fully indemnify NES and hold it harmless against Plaintiffs' claims." In a letter dated August 25, 2010 (Doc. 106-1, Exhibit D), Pen Pals rejected NES' tendered defense, pointing to the deposition testimony of Simon in which Simon admitted to using his personal credit card to rent the aerial lift.

On October 28, 2010, the parties deposed Charles Richard Connor, Jr., a district manager with NES. Again, Pen Pals pursued a line of questioning regarding the factual

basis of NES' Crossclaim. Specifically, perhaps more so in this deposition than any other, Pen Pals sought to establish that Simon rented the aerial lift from NES in his individual capacity, rather than as an agent or representative of Pen Pals.

Several other NES employees were scheduled to be deposed on November 5, 2010, but these depositions were postponed at the request of counsel for Simon and NES. Despite being informed by NES months earlier of the potential Crossclaim, Pen Pals now argues that because "evidence developed through discovery conclusively showed that [Simon], rather than Pen Pals, rented the subject aerial lift from NES, Pen Pals had no reason to request that the depositions of [the NES employees] proceed as planned." In contrast, perhaps not surprisingly given the current procedural posture of this case, NES saw things differently. According to NES, "the evidence developed demonstrated that Simon rented the subject aerial lift from NES[,] … and [o]nce it was clearly established that Simon acted as an agent and member of Pen Pals at all material times and that Pen Pals was the actual "Customer" that rented the aerial lift, NES dismissed the [Crossclaim] against Simon via stipulation filed November 12, 2010."[3]

On November 17, 2010, twelve days before the November 29, 2010 discovery deadline, NES re-filed its Crossclaim against Pen Pals (Doc. 96). The Crossclaim filed against Pen Pals is based on the same indemnity obligations contained in the Rental Agreement, and also contains several breach of contract claims arising out of the Rental Agreement. Discovery continued during this time, including the deposition of another former NES employee on November 23, 2010.

---

[3] Simon had previously resolved the claims asserted against him by the Plaintiffs.

Pen Pals answered NES' Crossclaim December 1, 2010 (Doc. 104), and then moved to dismiss NES' Crossclaim (Doc. 105) on December 6, 2010, alleging that it was improperly filed without leave of court and/or was untimely.[4] To cure this alleged defect, NES filed the present Motion to incorporate the previously-filed Crossclaim against Pen Pals. Importantly, the Motion was filed on December 16, 2010, after the November 29, 2010 close of discovery but *before* the Court-imposed December 28, 2010 deadline for filing motions to amend the pleadings and add parties. The Motion is now ripe for review.

*B. Analysis*

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." However, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny leave to amend is within the discretion of the trial court, there must be a substantial reason to deny a motion to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Substantial reasons include, among others, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id*. Moreover, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a

---

[4] Pen Pals' Motion to Dismiss or Strike NES' Crossclaim (Doc. 105) is currently pending for review and determination by this Court. Because the Court intends to resolve the Motion to Dismiss in this Order, and because Pen Pals raises several of the same arguments in its Response to NES' Motion to Amend (Doc. 112) as it does in its Motion to Dismiss, the Court will consider some of those arguments in its analysis below.

proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

Here, Pen Pals claims that, if the Court grants NES' Motion, (a) Pen Pals will experience substantial prejudice and (b) it will cause an undue delay of this proceeding.[5] Thus, Pen Pals asserts that NES should be required to litigate the indemnity claims in a separate suit after the conclusion of this matter.

The grounds Pen Pals relies on in opposition to NES' Motion are interrelated, and both of these arguments rely on the proposition that, to some degree, Pen Pals never expected that it would have to defend against the allegations in the Crossclaim and that, as a result, it must devote significant resources to deposing witnesses who have already been deposed. First, with regard to Pen Pals' claim that it will experience substantial prejudice if NES is allowed to amend its answer to file its Crossclaim, Pen Pals alleges that it will "incur additional time and expense in retaking the corporation deposition of NES, the deposition of [Simon] and other potential witnesses who have already been deposed, not to mention the fact that the evidence elicited thus far from Mr. Schulte, [Simon], Mr. Connor and NES' corporate representative does not support the allegations contained in the [Crossclaim]." Second, as to Pen Pals' assertion that allowing NES leave to amend its answer and file its Crossclaim against Pen Pals will cause an undue delay of this proceeding, Pen Pals alleges that it has not conducted any meaningful discovery concerning the allegations made against it in the Crossclaim and that, allowing NES to amend would "require the reopening of discovery in this

---

[5] Pen Pals also alleges that NES' Motion was "untimely." The Court finds this argument unpersuasive. Although the Motion was indeed filed after discovery had closed, as noted above, it was filed within the applicable deadline for filing motions to amend the pleadings, and therefore was "timely."

matter … to allow Pen Pals to conduct additional discovery on these new and contradictory allegations asserted by NES, thereby further delaying this proceeding."

The Court disagrees. Although NES originally filed its Crossclaim against Simon alone, Pen Pals knew that the Plaintiffs contended that Pen Pals was vicariously liable for Simon's acts and omissions because Simon was Pen Pals' agent. Even if Pen Pals was not initially anticipating that it would be added as a party to the Crossclaim, it certainly knew that it would likely end up a Defendant to the Crossclaim when it received NES' August 20, 2010 letter. In that letter, NES tendered its defense to Pen Pals based on NES' contention that Simon rented the aerial lift as an agent of Pen Pals.

Moreover, although the parties have only provided the Court with excerpts from relevant depositions thus making it difficult for the Court to examine this testimony in context, it is apparent that Pen Pals conducted discovery with the Crossclaim in mind. At the previously discussed depositions of both Simon and several current and former NES employees, one of which, notably, took place after NES first filed its Crossclaim against Pen Pals on November 17, 2010, Pen Pals' counsel repeatedly pursued a line of questioning regarding the factual basis for the Crossclaim against it. Throughout the discovery period, both before and after the Crossclaim was filed against it, Pen Pals sought to establish that Simon rented the aerial lift in his individual capacity, rather than as an agent of Pen Pals, presumably in an attempt to prove that the indemnity obligations in the Rental Agreement, which form the basis of NES' Crossclaim, would not apply to Pen Pals. Thus, it appears that Pen Pals had an opportunity to conduct meaningful discovery concerning the allegations against it in NES' Crossclaim.

In short, the Court is of the opinion that allowing NES to amend its answer and assert its Crossclaim against Pen Pals will not result in substantial and undue prejudice to Pen Pals nor will it cause an undue delay of this proceeding. Because there is no other substantial reason to deny the Motion, the Motion (Doc. 106) is **GRANTED**. Accordingly, in light of the Court's decision to grant the Motion, Pen Pals' Motion to Dismiss or Strike NES' Crossclaim (Doc. 105) is **denied as moot**. Pen Pals has requested that the Court reopen discovery and require NES to pay all reasonable costs associated with such discovery. Having reviewed the record in this case, the Court declines to do so in this Order. Although the Court is not necessarily opposed to reopening discovery in some extraordinarily-limited fashion, there is no need to reopen discovery generally.

**SO ORDERED,** this 15th day of February, 2011.

                                                S/ Marc T. Treadwell
                                                MARC T. TREADWELL, JUDGE
                                                UNITED STATES DISTRICT COURT