IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **MICHAEL LAMENSDORF and KATHY LAMENSDORF, Individually as Parents of JOHN HUNT LAMENSDORF, Deceased, and as Personal Representative(s) of the Estate of JOHN HUNT LAMENSDORF, Deceased,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, )<br>) | |
| v. )<br>) | CIVIL ACTION NO. 5:09-CV-424 (MTT) |
| **JASON WELIN and PEN PALS PRODUCTIONS, LLC,** )<br>)<br>) | |
| Defendants. )<br>) | |
| **NES EQUIPMENT SERVICES CORPORATION,** )<br>)<br>) | |
| Crossclaim Plaintiff, )<br>) | |
| v. )<br>) | |
| **PEN PALS PRODUCTIONS, LLC,** )<br>) | |
| Crossclaim Defendant. )<br>) | |

## **ORDER**

The facts of this case are discussed in the Court's Orders entered May 17, 2011, in both this case and the companion declaratory judgment action, *North American Specialty Insurance Co. v. Pen Pals Productions, LLC, et al.*, Civil Action No. 5:10-CV-191 (MTT). On September 21, 2011, the jury returned a verdict in favor of NES Equipment Services Corporation on its crossclaim against Pen Pals Productions LLC, finding that Pen Pals breached the terms of a Rental Agreement in two separate ways:

first, by failing to indemnify NES, and second, by failing to name NES as an additional insured on Pen Pals' insurance policy.  (Doc. 216).  Before trial, the parties agreed that, depending upon the jury's verdict, several matters would be decided by the Court. These issues are (a) under each theory of breach, which categories of damages are recoverable, and (b) the amount and reasonableness of the damages to be awarded under each category.  In light of the jury's findings, those issues are now ripe for review.[1]

Prior to trial, the Court orally ruled on which categories of damages would be recoverable under each theory of breach, in the event the jury found in favor of NES. This Order confirms those rulings.

### A.      Recoverable Damages Under Each Theory of Breach

The primary item of damages in dispute is attorney's fees and expenses of litigation.[2]  In its crossclaim, NES sought recovery for *all* attorney's fees, expenses, and costs it incurred which arose from the investigation of and litigation resulting from John Lamensdorf's death.  There are four separate categories into which the damages NES seeks fall: (1) defense of the Lamensdorfs' suit (the "main action"); (2) defense of the

---

[1] The parties are convinced that pursuant to any potentially applicable law, courts, rather than juries, should determine whether attorney's fees are recoverable and, if so, the amount of those fees.  Without necessarily agreeing that the parties are correct, the Court accepted the parties' stipulation that the Court would decide these issues.

[2] Pen Pals concedes that NES is entitled to recover the amount it paid to settle the Lamensdorfs' claims in the main action.  This payment will be accounted for in the Court's final calculations.

third-party complaint filed against NES by New York University and Ezra Sacks in the United States District Court for the Southern District of New York, Civil Action No. 1:10-CV-3462 (JSR) (the "New York action"); (3) defense of the declaratory judgment action filed against NES and others by North American Specialty Insurance Company in this Court, Civil Action No. 5:10-CV-191 (MTT) (the "declaratory judgment action"); and (4) pursuit of NES' crossclaim against Stephen Michael Simon and Pen Pals (the "crossclaim").

### i. Failure to Indemnify

Before addressing the substance of NES' request for attorney's fees, the Court notes that Illinois[3] follows the American Rule, under which each party to a lawsuit generally bears its own expenses. *Hous. Auth. of Champaign Cnty. v. Lyles*, 918 N.E.2d 1276, 1278-79 (Ill. App. 2009). Illinois also recognizes an exception to the American Rule, however, if the parties to a contract expressly authorize recovery of attorney's fees. *Id.*

The jury found that Pen Pals breached the Rental Agreement by failing to indemnify NES. The indemnity provision Pen Pals breached reads, in pertinent part, as follows:

> Customer agrees to fully indemnify and hold harmless [NES] … against any and all costs, claims, demands, or suits, pending or threatened (including costs of defense, attorney's

---

[3] Section 14 of the Rental Agreement contains a choice of law provision stating that Illinois law shall govern the Rental Agreement. The parties agree that Illinois law governs the issues addressed in this Order.

>fees, expert witness fees, investigation and all other costs of litigation) for any and all bodily injury, death, destruction, property damage, or     any other costs, damages or loss, regardless of whether such injury, death, destruction, damage or loss is caused in whole or in part by negligence, which in whole or in part, arise out of, result from, or relate to the use, operation, condition, or presence of the Equipment except when such injury, damage or loss is caused solely by the gross negligence or willful misconduct of [NES]….
>Customer, on behalf of itself and all Persons at Risk, accepts and fully assumes any and all risks and the possibility of personal injury, death, disability, property damage or loss resulting from the operation of the Equipment and hereby agrees to fully indemnify and hold harmless [NES] … against any and all    such costs, claims, demands, or suits, pending or threatened (including costs of defense, attorney's fees, expert witness fees, investigation and all other costs of litigation resulting from such personal injury, death, disability, property damage or loss).

Under Illinois law, and based on the language in the indemnity provision at issue, only the fees incurred in defense of the main action and the fees incurred in defense of the third-party complaint in the New York action are recoverable for Pen Pals' breach of its duty to indemnify NES. Thus, fees incurred in defense of the declaratory judgment action and fees incurred in pursuit of its crossclaim against Stephen Michael Simon and Pen Pals are not recoverable under this theory of breach.

With regard to the crossclaim, Illinois law is clear that, in the absence of a statutory or contractual basis, an indemnitee "may not recover fees and expenses incurred to establish his right against the indemnitor." *Pennsylvania Truck Lines v. Solar Equity Corp.*, 127 F.R.D. 127, 129 (N.D. Ill. 1988) (internal quotation marks and citation omitted). In *R.R. Donnelley & Sons Co. v. Vanguard Transp. Systems, Inc.*, the court held that "[w]hen sophisticated commercial parties … want to include attorney's

fees incurred in connection with suits brought by them enforcing the contracts, they know to express themselves with clarity." 641 F. Supp. 2d 707, 724 (N.D. Ill. 2009) (citing *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 881 (7th Cir. 2005) (indemnification required "from and against any liability, loss, cost, attorneys' fees, and expenses whatsoever, including the enforcement of this agreement")). Under Illinois law, "contractual provisions regarding attorney's fees are strictly construed, and any ambiguity in the contract is strictly construed against the party that wrote it" (here NES). *Id.* at 722. The indemnity provision in the NES Rental Agreement does not provide for the recovery of fees incurred in bringing an action to enforce its right to indemnity. Rather, like the indemnity provision in *R.R. Donnelly & Sons*, it contemplates indemnification for claims against NES. Accordingly, fees incurred in pursuit of the crossclaim are not recoverable.[4]

With regard to the declaratory judgment action, neither the parties nor the Court have found authority discussing whether similar indemnity agreements encompass attorney's fees incurred in such actions. However, the Court concludes that that action is not a suit for "bodily injury, death, destruction, property damage, or any other costs, damages or loss … which in whole or in part, ar[o]se out of, result[ed] from, or relate[ed]

---

[4] In its reply brief, NES cites for the first time *Montgomery Ward & Co., Inc. v. Wetzel*, 423 N.E.2d 1170 (Ill. App. 1981), for the proposition that attorney's fees and expenses incurred in prosecution of a claim for indemnity are recoverable even if not expressly provided for in the contract. The analysis in *Montgomery Ward* is spare and thus it is difficult to discern the basis for the court's conclusion. However, the indemnity provision in *Montgomery Ward* was not at all similar to the indemnity provision here. *R.R. Donnelly & Sons* and similar cases are much more on point.

to the use, operation, condition, or presence of the Equipment." Accordingly, fees incurred in defense of the declaratory judgment action are not recoverable for Pen Pals' failure to indemnify NES.

### ii.     Failure To Name NES As An Additional Insured

The Jury also found that Pen Pals breached the Rental Agreement by failing to name NES as an additional insured on its insurance policy. Because the scope of recoverable damages under this theory of breach is not dependent upon the language of the Rental Agreement, the analysis of which categories of damages are recoverable is more straightforward. The general rule in Illinois is that "one who commits an illegal or wrongful act is liable for all of the ordinary and natural consequences of his act." *Sorensen v. Fio Rito*, 413 N.E.2d 47, 51 (Ill. App. 1980). If NES had been named an additional insured, it would not have incurred the expenses of defending the main action, the New York action, the declaratory judgment action, and the crossclaim. However, as discussed above, in the absence of a statutory or contractual basis, Illinois law does not allow the recovery of fees incurred in the prosecution of a claim for indemnity, thus precluding NES' recovery of fees incurred in pursuit of its crossclaim. *Pennsylvania Truck Lines*, 127 F.R.D. at 129. Accordingly, as a result of Pen Pals' breach of the Rental Agreement by failing to name NES as an additional insured on its insurance policy, NES may recover the fees incurred in defense of the main action brought by the Lamensdorfs, the fees incurred in defense of the third-party complaint in the New York action, and the fees incurred in defense of the declaratory judgment action.

**B.     Amount and Reasonableness of Attorney's Fees**

Having determined that NES is entitled to recover certain categories of attorney's fees and expenses, the final task for the Court is to calculate the amount of attorney's fees and expenses to be awarded under each category.  The Seventh Circuit Court of Appeals, applying Illinois law, has determined that the scope of a court's inquiry regarding an award of attorney's fees resulting from a breach of contract is limited.  *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518 (7th Cir. 1999).  Rather than engage in a line-by-line analysis of attorney billing statements, as the Court would do were the fees in question sought pursuant to a fee-shifting statute, the applicable standard for the Court to apply is whether the fees and expenses, when viewed in the aggregate, are "commercially reasonable."  *Id*. at 520-21.  Thus, the Court has not engaged in a detailed analysis of whether the time spent on each task was "reasonable."  The Court did, however, ensure that the claimed fees were allocated to the appropriate "category," e.g., whether claimed fees were incurred as part of the main action verses the crossclaim.  Necessarily, this required the Court to pore over the bills produced by NES, but the Court notes that this task was not outside of the Court's purview.[5]

---

[5] Having stated the applicable standard, two exceptions merit note.  The Court would not allow recovery of fees associated with Pen Pals' motion to compel, Doc. 176, or NES' renewed motion for summary judgment, Doc. 184, regardless of whether they fell into a category for which recovery may be had.  Pen Pals' motion to compel was necessitated by NES' refusal to produce its attorneys' bills notwithstanding the fact that it sought to recover those expenses from Pen Pals.  After an in-camera inspection of the bills by the Court, it was apparent that NES had no basis for refusing to produce these bills.  NES' second motion for summary judgment,

Whether an amount is commercially reasonable is to be determined through market mechanisms, and "[t]he best of evidence of the market value of legal services is what people pay for it." *Balcor Real Estate Holdings, Inc., v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). Indeed, as the Seventh Circuit stated in *Balcor*, "this is not 'evidence' about market value; it is market value." *Id.* Thus, the fact that bills have already been paid strongly suggests that they meet market standards. *Id.* Moreover, reasonableness is further indicated if the bills are paid "at a time when … ultimate recovery was uncertain," as was the case here. *Medcom*, 200 F.3d at 521. Although NES certainly hoped that it would prevail, and that it would therefore recoup its attorney's fees, it paid the vast majority of the fees in question during the ordinary course of business. Accordingly, the Court will restrict itself to an appropriate "overview" of NES' reported defense costs in this case.

    i.    **Pen Pals' Specific Objections**

The Court addresses Pen Pals' specific objections to NES' post-trial damages submission as follows:

First, with regard to Pen Pals' claim that NES is not entitled to fees and costs incurred prior to a claim being asserted against it, the Court disagrees. The indemnification provision allows recovery for "any and all costs, claims, demands, or

---

which the Court construed as a motion for reconsideration, was untimely and failed to comply with the Court's rules regarding motions for reconsideration. The fees associated with these filings should not have been incurred. Because NES properly attributed these expenses to the crossclaim, for which the Court has ruled expenses are not recoverable, this ruling does not affect the Court's final award.

suits, pending or threatened (including costs of defense, attorney's fees, expert witness fees, investigation and all other costs of litigation) … which in whole or in part arise out of, result from, or relate to the use, operation, condition, or presence of the Equipment…." Based on this language, the Court concludes that fees and expenses incurred prior to an actual lawsuit being filed are recoverable.

Second, Pen Pals claims that fees and expenses incurred prior to NES' tender of its defense to Pen Pals are not recoverable. Again, the Court disagrees. Pen Pals relies either on cases not applying Illinois law or on cases interpreting the effect of tender on a duty to *defend* as opposed to a duty to *indemnify*. "The duty to indemnify arises only when the insured becomes *legally obligated* to pay damages in the underlying action that gives rise to a claim under the policy," and "one does not become 'legally obligated' until a judgment or settlement is reached between the parties." *Douglas v. Allied American Ins.*, 727 N.E.2d 376, 381 (Ill. App. 2000) (emphasis in original).

In *Montgomery Ward & Co., Inc. v. Wetzel*, 423 N.E.2d 1170 (Ill. App. 1981), the Illinois Court of Appeals discussed the effect of a tender on a party's duty to indemnify:

> The indemnity provision before us is clear and unambiguous…. The concepts of "tender and defense" or "right to control" are never mentioned, explicitly or implicitly, in the clause. From an examination of the clear and uncontroverted language of the agreement, the court properly concluded that no genuine issue of material fact existed as to whether the parties intended to impose a duty to tender [a] defense….

423 N.E.2d at 1177; *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 1985 WL 4860 at *1 (N.D. Ill. Dec. 9, 1985) (holding that an indemnity contract providing for payment of attorney's fees dealt with the reimbursement of *money*, not the provision of a service, and that a party's tender of defense did not create an issue of material fact).

Here, the indemnity provision is silent as to any duty to tender a defense or provide notice of pending or threatened litigation.  Based on the language of this indemnity provision, the Court concludes that NES' recovery of attorney's fees is not dependent upon or affected by the timing of its tender.  Accordingly, NES is entitled to recover its fees and expenses incurred prior to the tender of its defense to Pen Pals.

Last, Pen Pals claims that NES has failed to establish that the rates charged by its counsel were the prevailing market rates, in effect arguing that NES' counsel's hourly rates are excessive.  In support of this argument, Pen Pals cites to cases holding that the reasonable hourly rate is to be determined based on the prevailing market rate in the forum community, as opposed to the community in which the attorney practices.  Pen Pals is correct that, generally, "the relevant legal community," for purposes of determining prevailing market rates, "is that place where the case is filed."  *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).  However, this Court, in a case cited by Pen Pals, has previously held that a party may recover fees based on rates outside the district where the court sits if the party can show why it was necessary to go outside the district and obtain counsel at higher rates.  *Mun Hwa Broad. Corp. v. Mi Sook Kim*, 2007 WL 1730137 at *2 (M.D. Ga. June 13, 2007).  The Court is satisfied

that NES has provided a sufficient explanation for its decision to retain Atlanta counsel. (Doc. 225 at 27-28).

More importantly, under Illinois law, the principle that the forum community is the relevant community for purposes of determining prevailing market rates is not applicable when attorney's fees are sought as an element of damages, rather than under a prevailing party or fee-shifting statute.  As discussed above, in cases in which fees and expenses are sought for breach of contract, the relevant inquiry for the Court is whether, when viewed in the aggregate, the fees and expenses are "commercially reasonable." *Medcom*, 200 F.3d at 520-21.[6]  Here, although perhaps higher than the hourly billing rates of attorneys located in Macon, the Court cannot say that rates of $295/hour for partner time, $280/hour for associate time, and $135/hour for paralegal time are commercially unreasonable.

### ii. Improper Allocation

Pen Pals argues that specific billing entries were improperly attributed to either the main action or the declaratory judgment action.  Pen Pals claims these entries should have been attributed to the crossclaim, for which the Court has ruled fees are not recoverable, and that, as a result, the fees sought for the main action and the declaratory judgment action should be reduced accordingly.  The Court has reviewed

---

[6] Indeed, in those cases discussing the scope of the Court's inquiry in awarding fees for breach of contract, the courts did not employ the "lodestar method," wherein a court engages in the often detailed analysis of determining the reasonable hourly rate and the number of hours reasonably expended.

Pen Pals objections and NES' responses thereto and has found that some of the entries, at least in part, should be attributed to the crossclaim.

- Invoice #193299 (NES 00752): $2,194.00 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $11,102.50 – $2,194.00 = $8,908.50

- Invoice # 195301 (NES 00784): $112.00 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $52,391.30 – $112.00 = $52,279.30

- Invoice # 196310 (NES00803): $1,227.00 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $31,079.54 – $1,227.00 = $29,852.54

- Invoice # 197434 (NES00824): $6,225.75 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $77,580.61 – $6,225.75 = $71,354.86

- Invoice #198429 (NES 00850): $3,237.00 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $31,516.79 – $3,237.00 = $28,279.79

- Invoice # 199412 (NES 00873): $280.00 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $21,061.71 – $280.00 = $20,781.71

- Invoice # 200302 (NES 00886): $784.00 attributed to the main action should be attributed to the crossclaim;

    o   Corrected main action total: $13,921.60 – $784.00 = $13,137.60

- Invoice # 201321 (NES 00898): $1,008.50 attributed to the main action should be attributed to the crossclaim;[7]

    o   Corrected main action total: $-213.11

- Invoice # 202424 (NES 00904): $56.00 attributed to the declaratory judgment action should be attributed to the crossclaim;

    o   Corrected declaratory judgment action total: $17,482.00 – $56.00 = $17,426.00

- Invoice # 203355 (NES 00917): $1,120.00 attributed to the declaratory judgment action should be attributed to the crossclaim;

---

[7] Apparently due to a voided check, NES, in its proposed calculations (Doc. 225-17), allocated the fees and expenses from Invoice # 201321 between only the crossclaim and the declaratory judgment action, even though some of the billing entries related to the main action (in fact, NES applied a credit to the main action on this invoice).  Because there is no value from which to subtract the $1,008.50 attributed to the main action that should have been attributed to the crossclaim, the Court will instead use the $213.11 credit value supplied by NES.

- o   Corrected declaratory judgment action total: $13,940.51 – $1,120.00 = $12,820.51

- Invoice # 205370 (NES 00936): $510 attributed to the declaratory judgment action should be attributed to the crossclaim;

  - o   Corrected declaratory judgment action total: $9,136.13 – $510.00 = $8,626.13

The appropriate changes to these invoices will be incorporated into the Court's final calculations.

### iii.   Prejudgment Interest

NES also asserts that, pursuant to Illinois law, it is entitled to prejudgment interest on its award of fees and expenses against Pen Pals. Pen Pals does not object to an award of prejudgment interest. Under the Illinois Interest Act, 815 ILCS 205/2, prejudgment interest is allowed for creditors at a five percent annual rate for all amounts after they become due on any instrument in writing. The Rental Agreement constitutes an "instrument in writing," and prejudgment interest therefore began to accrue when the defense costs became due and payable and capable of exact computation. *Caterpillar, Inc. v. Century Indem. Co.*, 2011 WL 488935 at *12 (Ill. App. Feb. 1, 2011). Here, the amounts owed as indemnity were due and capable of exact computation on the dates that NES paid each invoice. Accordingly, the amount of prejudgment interest will be calculated separately for each invoice, beginning on the date the invoice was paid and continuing up until the date of this Order.

### C. Conclusion

For the reasons set forth above, NES is entitled to $460,053.15 in attorney's fees, costs, and expenses incurred in the main action, $104,926.28 in attorney's fees, costs, and expenses incurred in the New York action, and $110,265.65 in attorney's fees, costs, and expenses incurred in the declaratory judgment action.[8] These amounts include the appropriate prejudgment interest.

**SO ORDERED,** this 12th day of December, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[8] Copies of spreadsheets detailing the Court's final calculations are attached to this Order. The Court's calculations are displayed in two separate spreadsheets, one (Court's Exhibit 1) for payments NES made to its counsel, Weinberg, Wheeler, Hudgins, Gunn & Dial, and another (Court's Exhibit 2) for payments NES made to third parties, including the amount paid to settle the main action with the Lamensdorfs. The third-party payments were related to either the main action or the New York action. The Court allocated these payments accordingly, and the amounts are reflected in the Court's final award.